UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

PAUL A. BERGERON,

        Plaintiff,        Case No. 1:16-cv-1060

v.        Honorable Paul L. Maloney

THOMAS MACKIE et al.,

        Defendants.

_____/

**OPINION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Discussion**

    I.    <u>Factual allegations</u>

Plaintiff Paul A. Bergeron presently is incarcerated at the Bellamy Creek Correctional Facility (IBC), though the actions about which he complains occurred while he was housed at the Oaks Correctional Facility (ECF). Plaintiff sues the following ECF officials: Warden Thomas Mackie; Deputy Wardens T. Ball and P. Sharp; Inspectors (unknown) Spencley, (unknown) Schiebner, and (unknown) Riggs; Resident Unit Managers M. Surbrook and (unknown) Thomas; Lieutenant (unknown) Bromley; Sergeant (unknown) Youndt; Corrections Officers (unknown) Pinkerton, (unknown) McColl, C. Guzikowski, and D. Black; Prisoner Counselor J. Erway; Doctor Robert Crompton; and Nurses (unknown) Briskie, R. Lamb, and D. Swickley.

The instant case is the third action that Plaintiff has filed in this Court. In *Bergeron v. Washington et al.*, 1:16-cv-476 (W.D. Mich.),[1] Plaintiff sued 63 Defendants, claiming in a conclusory fashion that he had been repeatedly harassed, threatened, abused and tortured at various MDOC facilities, including IBC. With the exception of then-MDOC Director Heidi Washington, Plaintiff failed to name any Defendant in the short body of his complaint. The Court dismissed the action for failure to state a claim on June 3, 2016. (1:16-cv-476, PageID.253-257.)

In *Bergeron v. Washington et al.*, No. 1:16-cv-460 (W.D. Mich.), Plaintiff brought a second largely conclusory complaint against 81 officials at ECF and IBC, including 17 of the 18 Defendants named in the instant action. Plaintiff generally alleged in Case No. 1:16-cv-460 that he was being harassed

---

[1]Plaintiff's complaint in case No. 1:16-cv-476 originally was filed in the Eastern District of Michigan on April 20, 2016, *see Bergeron v. Washington et al.*, No. 2:16-cv-11441 (E.D. Mich.), but was transferred to this Court on May 4, 2016. (1:16-cv-476, PageID.205-207.)

as a sex offender, that he had been threatened in front of staff by a prisoner, that his grievances were being ignored, that he was being discriminated against, that he was being subjected to retaliation, and that he was being subjected to cruel and unusual punishment. He described only one incident with specificity. According to his allegations, Plaintiff misbehaved on one occasion by covering his cell window with a mattress. When he would not remove it, members of the response team came to his cell, sprayed him twice with a chemical agent, entered the cell, roughly placed Plaintiff in handcuffs, beat him, and squeezed and twisted his right hand until his wrist and finger broke. Plaintiff added that the Defendants had prevented him from showering to remove the chemical spray, permitting him only to wash out his eyes for about 90 seconds. Plaintiff contended that his wrist was placed in an ace bandage, but no x-rays were taken until two months later, revealing a healed fracture. (1:16-cv-460, PageID.12-13.) In an opinion and judgment issued on May 13, 2016, the Court dismissed Plaintiff's complaint, holding that Plaintiff's allegations against the only Defendants named in the body of the complaint (including Defendant Mackie) were based solely on supervisory liability or failures to respond to grievances, which were insufficient to support a claim under § 1983. (1:16-cv-460, PageID.47-48.) The Court held that Plaintiff's retaliation claims were wholly conclusory and that the allegations against Defendant Homrich did not allege a constitutional violation. The Court dismissed Plaintiff's remaining claims against the other Defendants, because Plaintiff had failed to attribute any of the factual allegations to any of the named Defendants.

Plaintiff now brings a somewhat more specific complaint. He continues to make conclusory allegations of retaliation and "abusive misconduct" over a period of years and of disregard and cover-up of such conduct by supervisory employees, including Defendants Mackie, Ball, Sharp, Spencley, Schiebner, and Riggs. (Compl., ECF No. 1, PageID.6.) He also alleges that Defendants Surbrook,

Bassett, Erway, Pinkerton, and Bromley either mishandled grievance responses or failed to take action based on Plaintiff's complaints and grievances about other officers. As he did in Case No. 1:16-cv-460, Plaintiff again complains about the single incident during which he was extracted from his cell. This time, however, he specifies the date: March 20, 2015. In addition, as he did in Case No. 1:16-cv-460, he names Defendants Youndt, McColl, Guzikowski and Black as Defendants in the action. But this time, Plaintiff actually describes how these Defendants were involved in the use of excessive force in spraying him twice with chemical agent, beating him, breaking his wrist, and intentionally overtightening his restraints. Also in this case, in addition to naming Defendant Nurses Briskie, Lamb and Swickley, he alleges how these nurses were involved in his prior claim of inadequate health care. For the first time, Plaintiff also sues Defendant Dr. Crompton, alleging that Crompton failed to look at Plaintiff's wrist when he was on rounds in the segregation unit.

Plaintiff claims that Defendants violated his rights under the Eighth Amendment by using excessive force and failing to adequately treat his serious medical needs or by failing respond to his complaints about Eighth Amendment violations. Plaintiff also alleges that Defendant Surbrook violated his rights under the First Amendment by refusing to provide free postage for his complaint to the Michigan State Police, and that Defendants Ball, Sharp, Spencley and Schiebner violated his First Amendment rights by not responding to his complaints about Surbrook's denial of postage.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not

contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.     Res Judicata

Upon review of the two complaints, the Court concludes that the majority of Plaintiff's claims in this lawsuit are barred by the res judicata effect of this Court's decision in Case No. 1:16-cv-460. The Supreme Court has described the concept of res judicata as follows:

> Res judicata is often analyzed . . . to consist of two preclusion concepts: "issue preclusion" and "claim preclusion." Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided. . . . This effect also is referred to as direct or collateral estoppel. Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit. Claim preclusion therefore encompasses the law of merger and bar.

*Migra v. Warren City School District Board of Education,* 465 U.S. 75, 77 n. 1 (1984) (citation omitted). In other words, the doctrine of claim preclusion provides that, if an action results in a judgment on the merits, that judgment operates as an absolute bar to any subsequent action on the same cause between the same parties or their privies, with respect to every matter that was actually litigated in the first case, as well as every ground of recovery that might have been presented. *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 582 (6th Cir. 1994); *see Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 467 n.6 (1982); *see also Bowen v. Gundy*, No. 96-2327, 1997 WL 778505, at * 1 (6th Cir. Dec. 8, 1997). Claim preclusion operates to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and by preventing inconsistent decisions, encourage reliance on adjudication. *Allen v. McCurry*, 449 U.S. 90, 94 (1980). In order to apply the doctrine of claim preclusion, the court must find that (1) the previous lawsuit ended in a final judgment on the merits; (2) the previous lawsuit was between the same parties or their privies; and (3) the previous lawsuit involved the same claim or cause of action

as the present case. *Allen*, 449 U.S. at 94; *accord Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981).

Both issue and claim preclusion are applicable here. In all but one instance, the Defendants named in this action were named in the earlier action, in relation to the claims discussed. The issues were actually litigated and, largely because of insufficient allegations, were decided against Plaintiff in the earlier action in relation to those Defendants. No doubt exists that Plaintiff knew the names of the parties who were involved in the actions, yet he failed to articulate how those individuals were involved. In fact, despite the Court's clear description of the inadequacy of Plaintiff's prior complaint, Plaintiff failed to return to this Court to try to amend to cure his conclusory complaint. Instead, in a motion to amend, Plaintiff merely reiterated conclusory allegations. Under these circumstances, the prior action fully litigated the claims about supervisory liability, failure to adequately respond to grievances and complaints, the use of excessive force during the cell extraction, and the failure to provide adequate medical care for the injuries to Plaintiff's wrist and fingers. Issue preclusion therefore bars relitigation of those claims here for all Defendants except Defendant Crompton. Moreover, to the extent that Plaintiff now names Defendant Crompton participated in denying him medical care for his hand and wrist, his claim should have been advanced in that case and so is barred by the doctrine of claim preclusion.

As a consequence, all of Plaintiff's claims are barred by the doctrines of issue or claim preclusion, with the exception of (1) Plaintiff's First Amendment claim based on Defendant Surbrook's refusal to consider Plaintiff's complaint to the Michigan State Police to be legal mail (and therefore eligible for free postage), and (2) Plaintiff's complaint to the Michigan State Police and that Defendants Ball, Sharp, Spencley and Schiebner failed to correct Surbrook's decision.

### B. Supervisory Liability

Plaintiff claims that Defendants Ball, Sharp, Spencley and Schiebner failed to take corrective action when Surbrook declined to give Plaintiff a postage loan to mail a complaint to the Michigan State Police. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Ball, Sharp, Spencley and Schiebner engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

### C. First Amendment

Plaintiff complains that Defendant Surbrook declined to provide a postage loan to Plaintiff to mail a complaint to the Michigan State Police. Plaintiff contends that the complaint should have been considered legal mail, and therefore have been eligible for additional postage loan.

Under MDOC policy,

> An indigent prisoner shall be loaned the postage equivalent for mailing a maximum of ten first class letters of one ounce or less during each month s/he is on indigent status. The postage shall be loaned at the time the prisoner is mailing a letter or package. Postage not used by the prisoner during the month shall not be carried forward. Funding for the postage shall be from the Prisoner Benefit Fund (PBF). Any postage loaned shall be treated as an institutional debt and collected as set forth in PD 04.02.105 "Prisoner Funds"; funds collected shall be returned to the PBF which funded the loan.

MICH. DEP'T OF CORR., Policy Directive 04.02.120 ¶ H. In addition, MDOC policy provides as follows:

> Funds for additional first class postage shall be loaned to prisoners who lack sufficient funds to send mail to a court, an attorney, or a party to a lawsuit due to pending litigation. This includes the initial filing and service of a lawsuit. The cost of certified mail shall be loaned only if the prisoner is required by court order to use certified mail (e.g., an order denying the prisoner's motion for substituted service by first class mail.) Postage shall be loaned to prisoners on indigent status pursuant to this paragraph only after the prisoner has used all postage available pursuant to Paragraph I.

MICH. DEP'T OF CORR., Policy Directive 05.03.118 ¶ J.

The Supreme Court has recognized that a state must "shoulder affirmative obligations to assure all prisoners meaningful access to the courts." *Bounds v. Smith*, 430 U.S. 817, 824 (1977). The Sixth Circuit has held that the MDOC provides meaningful access to the courts to indigent prisoners, protecting their First Amendment rights to freedom of speech and petition, by allowing indigent prisoners ten stamps per month to apply to uninspected, sealed letters. *Bell-Bey v. Williams*, 87 F.3d 832, 838-39 (6th Cir. 1996). The court has recognized that the limitation on postage loans constitutes a reasonable restriction on a prisoner's speech to further the government's interest in the management of its limited resources. *Id.* at 839. Moreover, the Sixth Circuit repeatedly has recognized that indigent prisoners do not have a constitutional right to obtain free postage to send non-legal mail. *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) ("Even as an indigent inmate, Argue had no constitutional right to free postage for nonlegal mail.") (citing *Moore v. Chavez*, 36 F. App'x 169, 171 (6th Cir. 2002), and

*Hershberger v. Scaletta*, 33 F.3d 955, 957 (8th Cir. 1994)); *see also Brown v. Crowley*, No. 99–2216, 2000 WL 1175615, at *3 (6th Cir. Aug. 10, 2000) ("The First Amendment does not compel prison officials to provide indigent prisoners with unlimited free postage and materials for non-legal mail.").

According to Plaintiff's certificate of trust account, Plaintiff is indigent. He does not contend that he was denied postage equivalent to ten first-class stamps per month or that he was prevented from mailing his complaint to the Michigan State Police. Indeed, it is apparent from Plaintiff's trust account statement, that he regularly received indigent postage loans from the MDOC. (ECF No. 2-1, PageID.21-39.) Plaintiff instead complains that his police complaint should have been counted as legal mail and therefore have been eligible for an additional postage loan that month, rather than requiring him to wait until the next month to mail his police complaint.

It is apparent from the police that a complaint to the Michigan State Police, on its face, fails to amount to "legal mail" as defined in the policy. Regardless, even if Defendant Surbrook misapplied prison policy by refusing to call the mailing to the Michigan State Police legal mail, that failure to comply with an administrative rule or policy would not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

For all these reasons, Plaintiff's First Amendment rights were not violated by Defendant Surbrooks action denying a legal-mail postage loan under MICH. DEP'T OF CORR., Policy Directive 05.03.118 ¶ J.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

Dated:   October 20, 2016            /s/ Paul L. Maloney
                                     Paul L. Maloney
                                     United States District Judge